Good morning. May it please the Court. Lee Tucker of the Federal Defender's Office for Mr. Juan Bermudez-Zamora. I will attempt to reserve two or three minutes. I'll keep an eye on the clock. When we look at the plain language of the provision at issue here, we look at both the text and the structure, and we see that the role of the phrase, at any time, is intended to decouple the timing of the conviction from the timing of the offense conduct that gave rise to that conviction. The offense conduct is timed either before, under B-2, the first order of deportation, or after, under B-3, the first order of deportation. And without that phrasing and the use of at any time, the guideline would be subject to the gap that this Court identified in U.S. v. Martinez. So in Martinez, we were dealing with the 2016 provision, which stated that before the order of deportation, the defendant had to have sustained a conviction, a felony conviction with a sentence of greater than two years. The defendant in that case had received a felony conviction but only a one-year sentence, not more than two years, but upon revocation after the deportation, the sentence increased. So in response to that gap, and in Martinez, the defendant was given relief because of the ambiguity. In response to that gap, the Sentencing Commission, through Amendment 809, brought us the current version, which this Court is now addressing. The only difference for our provision is that the phrase at any time was just moved to later in the provision.  That's correct, Your Honor. Okay. And I, so I, just in terms of interpreting your argument, it seems to me it wouldn't matter one way or the other whether it's remained in the place it was or if it's now where it is, right? I think that's probably correct, Your Honor. And I think the reason I'm speaking about it is because we see that it was introduced the way it was in B-3 to mirror B-2. So B-2 needed to have that change made to close the gap. B-3, just as a matter of symmetry, echoes that. But B-3, nothing new was introduced with the 2018 amendment. It still would pose the same problem for your client as it does now. That's all I was trying to, is that not fair? If it posed a problem for our client, which we don't think it does at either time. So because we see that through the text, the structure, and certainly the purpose, as we see in Amendment 809, the use of at any time is meant to just temporally distinguish it from the requirements of the before and after triggers. So you're suggesting that the time of the illegal reentry would have an important ring in this case? Your Honor, I am, because at the time of the illegal reentry, at the time of the federal offense, that would be the moment at which we would look to see the final status of that prior conviction. And at the point in which Mr. Bermudez came into the country and committed the offense, the status of that, the final status of that conviction was as a misdemeanor. What do you see in B-3 that tells you that we look to the time of the second or subsequent reentry? Well, it's less what I see in B-3 and more what I see in the case law that tells us that we don't look to any time that if the change has been made at that time, that's what we look to. So the point is that we look to the time of the second or subsequent reentry. Let me understand more. How do you define at any time? What does it modify? Correct, Your Honor. So it modifies the occurrence of the conviction, not the status of the conviction as a felony or misdemeanor. The status would be, you know. It marks the occurrence of the conviction. Correct. The occurrence led to a felony. The occurrence of the, right, but it's not modifying the felony status. It's just modifying the occurrence of the conviction. So here also if we look at the purpose of the guidelines, which, and in particular Chapter 2, is to capture the seriousness of the offense, and the Sentencing Commission and the courts under the direction of Congress have to look at states' assessments of the gravity of the prior offense in order to determine the appropriate federal recidivist enhancement. Could I ask you another question? Yes, Your Honor. The criminal conduct in and of itself was a misdemeanor. Your Honor, actually the criminal conduct was a petty offense with priors. It was an attempted theft of two beers from a convenience store. Sold two beers out of a supermarket or something like that. Correct, Your Honor. It's only the priors that made it a felony. Correct. So could you say that the criminal conduct itself did not result in a felony? It's only the prior, the criminal history that result, caused the felony. That's a good point, Your Honor. I think that argument absolutely could be made. It was the, it was the, the then. And if it's the status of the State to leverage on the criminal history to make it a felony, the State could change its mind at any time and change the status. Absolutely, Your Honor. Excuse me. And that is exactly what happened with Proposition 47. So you like that argument? I love it. What if, what if, if we were to accept your argument and if there were a misdemeanor and it were thereafter deemed a felony, would the State be able to change the sentence and impose the 10-level enhancement? You mean sort of the opposite of what we have here? Right. I believe that would probably present an ex post facto issue. Well, but just a minute. If in fact your argument is that, what would be the bad, what would be the, why would that not be available? If in fact you're saying that if any time they change this, then the sentence can be imposed differently, why is it that that would go up? Why wouldn't we be able to then change it? I mean, ex post facto isn't going to deal with it. Well, I believe it would because the protections inherent in a misdemeanor proceeding would not have been those inherent in a felony proceeding. I don't think it could go that other way. Also, I just wanted to come back to Judge Hillerstein's comment, if I may. And your sister judge in the Eastern District of New York recently dealt with an analogous situation with the Drug Reform Law Act of New York and the application of, I believe it was ACCA, and said exactly that, that when the state legislature has recognized the need to renounce a previous draconian sentencing scheme and correct it, then the Federal courts ought to respect that and to fail to respect that would just be compounding the injustice. Well, that's not the point I was making. The point that I was making is that the criminal conduct that was resulting in a felony was really not resulting in a felony. And I agree. And I do think that is a great argument. But if in fact we look at the sentence itself, it says engaged in the criminal conduct that at any time resulted in a conviction for a felony offense, this criminal conduct at the time it happened resulted in a conviction for a felony offense. But the result did not, the final result was a misdemeanor conviction. But that's just putting resulted at any time or at any time resulting. All I'm saying is there is a time when the criminal conduct in this particular case resulted in a conviction for a felony offense. It's not another illegal reentry. And it was a sentence which was imposed of five years or more. To apply that interpretation would subvert the purpose of the guidelines. And I also want to point out the different purpose. Why would it subvert the purpose? Because the purpose of the guidelines is to reflect the gravity of the offense conduct. Well, just a minute. It did reflect the gravity of the offense of conduct at the time the sentence was imposed. The 10-level enhancement is the highest enhancement available under 2L1.2. And that is the enhancement for people whose priors are armed robbery, aggravated sexual assault, et cetera. It is unfair and inappropriate to put that same enhancement on Mr. Bermudez for attempting to steal two beers. And then finally, I just wanted to point out the distinction between chapter. We deal with it differently in the guidelines. We deal with it in criminal history. Exactly. The conduct yields a certain kind of offense level. And then the criminal history will step it up one, two, three, four, five, or six. Correct. According to the severity and frequency of the prior crimes. Correct. The State had a different regimen and changed it. Correct. And that's exactly the point. Chapter 4 addresses the issue of recidivism and deterrence. And chapter 2. It's the criminal history. Correct, Your Honor. Thank you. Yeah. Just one more question. That is my main problem with your argument. My understanding is that we are supposed to treat convictions for purposes of this enhancement basically the same way they get treated for purposes of calculating criminal history, the criminal history category. And as I understand it, if, as I understand it, actually your client did get three points for this conviction. I don't think you even contested that. Based on the length of the sentence. Notwithstanding the fact that it's since been reclassified. And if that's correct, if in fact he was rightly given, you know, the full three points under chapter 4, why would we then treat it inconsistently for purposes of B3? So, Your Honor, thank you. That would not be an inconsistent treatment by any means. So the fact that chapter 4, the chapter 2 enhancement only applies if points are given under chapter 4. But the inverse is not the case. The fact that an offense receives criminal history points does not necessitate application of the enhancement. Why would there be a different regime is what I'm saying. There, too, you get a certain number of criminal history points depending on the length of the sentence. Right? Is it more than a year? You get the three. Yes, Your Honor. It's more than one year. Right. So if the reclassification of your client's now misdemeanor offense were given the full retroactive effect that you're arguing for, then he should not have gotten three points. Right? If it were going to be treated consistently. Well, that may also be true. But the fact that he did get the three points and it was not contested does not mean that he should also get the chapter 2 points. Chapter 2. I don't hear you. I'm not understanding. I'm sorry. I'm saying all of our cases, including the case that the government cited in its 28-J letter. Correct. Basically say they're to be treated in the same manner. If you get the full, if you get basically, you get hit for the full sentence that you originally got under chapter 4, it's going to count under the B3. I disagree, Your Honor. And Cuevas Lopez, which the government cites, is a good example. In that case, the majority, and as you know, there was a strong dissent from Judge Acuda, and the government has been ordered to respond to the petition for rehearing en banc. The use of chapter 4 in that case was specifically directed to the single sentence rule and whether that would apply to chapter 2. It was not a global what we do in chapter 4 we do in chapter 2. Oh, but we have other cases that have said basically the same thing, don't we? Well, if I'm happy to do additional briefing, Your Honor, but I do not believe and certainly the government has not presented here a case that says the fact of getting criminal history points necessitates the chapter 2 enhancement. Okay. Well, if it doesn't necessitate it, why should they be treated differently? Well, for exactly that reason, because they serve different purposes. Chapter 4 is to address criminal history and the concerns of recidivism and deterrence. Chapter 2 is to address the seriousness of the instant offense. Okay? So in fact, I think the fact that he received criminal history points under chapter 4 makes it, for lack of a better word, much more palatable perhaps to the Court to understand why he should not receive the enhancement under chapter 2. If he receives an enhancement under State law for its priors and we count it again in 4, we're double counting. Correct, Your Honor. No, actually, I don't think that's right. So let me just understand. The length of the sentence under chapter 4 is being used for the exact same purpose that it is here, to measure it as a proxy for the seriousness of the prior offense. I disagree. It's not the same purpose. Why not? Why not? One is the seriousness of this offense. No, no, no. Of the prior offense. I think the point is that under 2, the offense is taken on a grid, the most lenient to the most severe, up to I think 42 or 43. The criminal history moves you horizontally on the grid to ever-increasing punishment. But the severity of the offense itself is, generally speaking, not found in chapter 4. The guideline is found in chapter 2 and takes you vertically down the grid. And what we have here is an extra step downward and then an extra step horizontally. So there's, in effect, a double measurement of the same offense. The offense itself would, if it were a criminal offense in the federal system, would be measured vertically. And then the prior criminal history would be measured horizontally. But what we have here because of the state characterization, an extra jump downward vertically and then a step horizontally. And, in effect, it could be a double counting. Not every double counting is wrong. But in this situation where the double counting is because of a characterization of the state, which has been removed, it's arguable that it may be unfair. That's your argument? Yes. Okay. Thank you. We'll give you some time for rebuttal. Let's hear from the government. Good morning. May it please the Court. I'm Chris Cabanillas from the District of Arizona U.S. Attorney's Office. I think members of this Court have hit the nail on the head in terms of the plain language of this provision, which I'd like to address first. As Judge Smith and, I think, Judge Watford noted, the plain language does say that if somebody is removed from the United States, and here the defendant was removed for the first time in 1997, the defendant engaged in criminal conduct that, at any time, resulted in a conviction for a felony offense, and we had that here in 2005, for which the sentence imposed was five years or more. Here he got seven years. The guideline plain language answers this question, and I think that the difficulty the Court is having with the defense counsel's argument is that you have to ignore the plain language of the guideline to get there. In addition, you're... Let's say that they're, I guess, I'm sort of troubled by the government's position in this case because of the unfairness that it seems to lead to. Let's say, just hypothetically, that somebody was sentenced to six years for a prior offense. The conviction became final. But it was determined afterwards that, actually, a big mistake had been made. The judge actually had ordered a sentence of six months, and they retroactively changed it back and said, We're really sorry we kept you in longer than six months. It was a big mistake, but you're free to go, and we've now resentenced you to six months. I take it you would say that that conviction gets the full ten levels, even though it was, everyone concedes it was a complete mistake? It should never have resulted in a sentence of six years? When you say a complete mistake, do you mean that it was invalidated as a conviction? Because that would be different. Conviction was valid. The judge meant to sentence the person to six months. Instead, somehow it got recorded as six years. The conviction became final. The mistake was discovered afterwards, and the state apologized profusely and resentenced the person to six months. You would say that, well, at one time, you were sentenced based on this conviction for six years, so we're going to give you ten levels? Actually, Your Honor, it wouldn't be me. It would be the Sentencing Commission. The Sentencing Commission has specifically said exactly what I just read. If, and what happened here is the district court varied downward five levels, and that's where I'd say that the, if there's a remedy for unfairness in an ultimate sentence under 3553A, the district court has that discretion to vary downward. The district court chose to vary downward. The district court went downward, but higher than the guideline that defendant argued should be applicable. But in this particular case, Your Honor, that would be the answer to Judge Watford's question. The Sentencing Guideline Commission says when the variances don't cure errors. The variances fix the conduct and fix the criminal history and say because of different problems, we're going to go below the guidelines or above the guidelines. And here's the answer to that, actually, Your Honor. It's the guideline language that says we focus on the timing of the criminal conduct under this provision. So it was the criminal conduct that the defendant engaged in, not the ultimate, even though he got a felony conviction. But that's where Cuevas Lopez comes in, and that's one of the reasons the government cited it in its 28J letter. It really focuses on the timing of the criminal conduct. And I'd like to point this Court to Amendment 809, which was also quoted at footnote 5 of Cuevas Lopez. And it talks about there that the 201.2, in that case, B2, but they also refer to the B3 mirror amendment in 2008, depends on the timing of the underlying criminal conduct and not on the timing of the resulting conviction. And that's where the defendant's argument unfortunately fails, because in that particular circumstance, we do look at the conduct, when the conduct was crafted. And the defense argument has been from below and up to here that it's all about when he reentered, and that's not the timing of it or when it's redesignated a misdemeanor. It's what was the conduct that resulted in a felony conviction, and if so, the plain language mandates that. I don't understand how that doesn't address the hypothetical I pose, because the hypothetical is the same. It's the sentence that he got that causes the problem here, right? Well, number one, I would say that that hypo is not what we have here, which I know you know, but I want to just mention that we don't have that. But I'm trying to figure out what the commission intended here. That's why I just don't buy your argument that, well, a variance will fix all this. We're trying to figure out what did the commission intend. Well, no, I think that the commission said what it meant. I don't know what it said. I don't know what this means, because it doesn't say, oh, and by the way, be sure to measure the length of the sentence as of, you know, the time that the criminal conduct occurred. I guess I would respectfully disagree. I think the plain language says what they meant, that if there's criminal conduct that at any time resulted in a felony, and this dovetails to your criminal history comment. Right, but I'm stating my hypothetical. The person did get a sentence of six years. At one point in the history of the world, he had a six-year sentence. It was a complete mistake. It should never have been six years. It should have been six months. And the underlying conduct, if I look at the time of the conduct, the conduct's the same. He should have only gotten six months then. He shouldn't have ever had six months. It seems to me the effect of Proposition 47 is basically the same. The State has recognized by wanting to give this retroactive effect that this should never have been a, what did he get, seven years, or I can't remember what the actual length was. Seven. It should have been six months or whatever, right? Your Honor, I guess all I can say is this Court has repeatedly said it analyzes federal sentencing looking at the plain language of the guidelines at the beginning. And if that plain language is not unclear, and we would submit it's not unclear here, that that's the language that applies. And here we have a defendant who engaged in conduct that resulted in a felony offense, which at any time, I think the language is, at any time resulted in a conviction for a felony. And the criminal history comment, Your Honor, is not a subordinate one. It's actually very relevant to this. Because this Court said in Cuevas, and I think that's why Judge Hellerstein's comment about the timing of when it was designated a misdemeanor is the gravamen of the determination. It is when the conduct is committed. And here it says the timing of the underlying criminal conduct. The conduct that was committed was a misdemeanor. It was only the prior history that caused it to be a felony. Your Honor, I guess when we look back at the cases again that the government cited, but also just the plain language of this, as the district court said. Taking the plain language. It says conduct. The conduct itself was a misdemeanor. Stealing two bottles of beer. Your Honor is relying on the timing of the resulting conviction with regard to when it was redesignated a misdemeanor. No. I would respect. No. I'm relying on a definition of criminal conduct. The conduct was escalated by prior history. That's not conduct. I respectfully disagree, I guess, Your Honor. I respectfully disagree. I think this guideline is crystal clear. It says if you commit criminal conduct after you're first removed, that at any time resulted in a conviction for a felony offense where the sentence imposed was more than five years, you get ten levels. That is the guideline, not the government. That is the sentencing commission determining that this is the enhancement that should apply. In addition, Cuevas Lopez said it makes sense for a prior offense to be treated in the same manner under both provisions of Chapter 4 as well as 201. And in Cuevas, they applied that. And I would note the dissent in Cuevas, too, has no quibble with what I'm saying. None. The dissent in Cuevas is more about whether or not the single sentence rule should apply in that case. But if you look at the dissent, they're interpreting the plain language the same way. In terms of finding, for example, at the end of the dissent says under the plain language, the dissent would argue Cuevas Lopez does not have a conviction for a felony offense for which the sentence that was imposed was five years or more. That's how even the dissent interprets the statute. The dissent is only in Cuevas Lopez concerned with whether or not in that particular circumstance and the way the convictions came down, whether it fits. But the plain language is the plain language. There's no getting around the plain language. We would respectfully submit. And that when that happens, and considering the parity there is in the analysis and also this Court's decision in Cuevas Lopez, we would respectfully ask this Court to affirm the sentence. Are there any other cases of ours besides the Cuevas case that have said basically that a conviction under B-3 or the equivalent is to be treated the same as it gets treated under Chapter 4? I believe that there are cases that are cited in that same page that I quoted on in the 28J letter. I'm quoting the Court's decision at 1064 in Cuevas Lopez as well as 1068. And they're citing on page 1068, it makes sense to treat priors in the same manner when they're used to determine the offense level under 2L1.2 as when they are used to determine the criminal history category. They're citing Ortiz-Gutierrez, one of this Court's decisions, Moreno-Cisneros, one of this Court's decisions, noting that 4A1.2 is analogous to 2L1.2B1, and 4 is broadly applicable. Frias from the Third Circuit as well, and another Second Circuit case in Galicia Delgado. So I would respectfully submit that's a well-worn rule in this circuit, that this Court should not interpret this differently, and that the District Court properly relied on the plain language here because it is what it is. Unless the Court has any more questions for me, I would rely on my brief. Okay. Thank you very much. Thank you. Let's put two minutes on the clock for defense counsel. Thank you, Your Honor and Your Honors. Just to wrap up, and I want to start with, as Judge Watford said, when you said, Your Honor, I don't know what this means, that sums it up. At best, this statute is ambiguous. And once we determine that the language we believe it's plain in our favor, but clearly there is some ambiguity that the Court is seeing. And once we get to that ambiguity, then we go further into the statutory interpretation. We look at Amendment 809. We see what the purpose is, the statement of reasons. And that informs our understanding of what that language is meant to accomplish. We go further, and we go to the rule of lenity. And that militates for a result in favor of Mr. Bermudez. I also agree with Your Honor that the example you gave of the six-year, six-month mistake is essentially what happened here. California made a big mistake. And when they finally admitted that mistake and rectified it, they made clear that this never, ever should have been a felony. And finally, I would like to go back to Judge Hillerstein's point, which I think is terrific, and I regret that I didn't raise it in our briefing, which is that if you look at the offense conduct, that is not what triggered that original sentence. But Ms. Tucker argues that conduct is infused with the fact that it is a third crime, and that you can't measure, shouldn't measure just the act itself, but the act infused by the history before it. It would not be the only time in the guidelines you'd have that kind of a condition. That's her argument, I think. If I'm mistaken. I'm sorry. Yes, actually, I'm Ms. Tucker. But, yes, the ---- I'm sorry. No, that's fine. The offense conduct, right, I think both States and Federally, we tend to look at the enhancements, the resulting from prior criminal history as separate from the ---- We tend to, yes. The offense conduct. And just finally on Cuevas-Lopez, I think it's clear probably to the Court as well that the facts of that case are inapposite here. It did not involve the issue that we're grappling with. But the general principle that was stated there, I think, cuts across. It's not unique to the single-sentence rule. Your Honor, it's not unique to the single-sentence rule, but it's unique to that particular question before. In other words, it might apply to other issues, but it doesn't apply broadly between Chapter 4 and Chapter 2. And I will, with the Court's indulgence, provide supplemental briefing on that point. I don't think we need supplemental briefing. If we do at some later point, we'll certainly let you know. But for now, you can rest on the briefs and the argument today. Thank you very much. Thank you so much. The case just argued is submitted.
judges: N.R. Smith, Watford, Hellerstein